UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SAMAN MASHAGHZADEHFARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 23-3164 (RJL) |
| ) | |
| ANTONY BLINKEN, *in his official* ) | |
| *capacity as Secretary of State*, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM OPINION

(September 16, 2024) [Dkt. #6, 7]

Plaintiff Saman Mashaghzadehfard brings this action against Secretary of State Antony Blinken, seeking to compel the U.S. Government to adjudicate his immigrant visa application. He is an Iranian national whose wife and children live in the United States. He alleges that the Government's failure to issue a final decision on his visa application after it has been pending for 19 months constitutes unreasonable delay under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555 and 701, *et seq*. The Government has moved to dismiss. For the following reasons, the Government's motion will be GRANTED.

I.  **Background**

Plaintiff Saman Mashaghzadehfard is an Iranian national living in Iran. Compl. [Dkt. #1] ¶ 68. His wife, Sepideh Ghavami, is a lawful permanent resident of the United States and lives here with their children. *See id.* ¶¶ 26, 68–69. In order to reunite their

family, Ghavami began the process of petitioning for a visa to bring plaintiff to the United States several years ago. *Id.* ¶ 69.

Foreign spouses of legal permanent residents seeking to immigrate to the United States must go through a multi-step process governed by the Immigration and Nationality Act ("INA"). That process begins when the sponsoring permanent resident files a Form I-130 petition with the U.S. Citizenship and Immigration Services ("USCIS"). *See* 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1); U.S. Citizenship & Immigr. Servs., *Bringing Spouses to Live in the United States as Permanent Residents*, https://www.uscis.gov/family/bring-spouse-to-live-in-US (last visited Aug. 30, 2024). Ghavami filed a Form I-130 petition on Mashaghzadehfard's behalf, and it was approved on July 31, 2018. Compl. ¶¶ 69, 70.

Once USCIS approves a Form I-130, it transfers the petition to the State Department's National Visa Center ("NVC") for processing. U.S. Dep't of State, *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process.html (last visited Aug. 30, 2024). Next, the foreign spouse must fill out Form DS-260, pay fees, and submit other documentation. *Id.*; *see* 22 C.F.R. § 42.81(b). Plaintiff paid his fees and submitted his Form DS-260 and all supporting documentation on March 18, 2022. Compl. ¶ 72.

The next stage of the process involves an interview with a consular officer. *See* 22 C.F.R. § 42.62; *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process.html. Once the entire "visa application has been properly completed and executed before a consular officer" in accordance with the INA and its implementing regulations, the consular officer must "issue" or "refuse" the

visa. 22 C.F.R. § 42.81(a). Plaintiff was interviewed by the U.S. Consulate in Yerevan, Armenia on January 30, 2023. Compl. ¶ 73. After the interview, the consular officer told plaintiff that his visa application was refused under § 221(g) of the INA and would have to undergo further administrative processing. *Id.* ¶¶ 74–75. On February 4, 2023, plaintiff submitted the supplemental information that the U.S. Consulate had requested. *Id.* ¶¶ 76–77. He has not yet received a final decision on his visa application. *Id.* ¶ 78.

## II.   Procedural History

On October 21, 2023, plaintiff sued Secretary of State Antony Blinken in his official capacity, claiming that the delay in adjudicating his visa application is unreasonable under the APA and seeking to compel the Government to issue a final decision on his visa application. Compl. ¶¶ 94–156. His complaint includes a claim for mandamus and claims under the APA. *See id.*

On December 26, 2023, the Government moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Def.'s Mot. to Dismiss ("Mot.") [Dkt. #6]. On January 2, 2024, Plaintiff filed a motion to compel production of the Certified Administrative Record ("CAR") under Fed. R. Civ. P. 37(a) and Local Civil Rule 7(n). Pl.'s Mot. to Compel ("Mot. to Compel") [Dkt. #7]. One week later, he filed his opposition to the Government's motion to dismiss. Pl.'s Response in Opp. to Def.'s Mot. to Dismiss ("Opp.") [Dkt. #9]. The Government filed its reply in support of its motion to dismiss on January 23, 2024. Def.'s Reply in Support of Mot. to Dismiss ("Reply") [Dkt. #13].

**III.  Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is a "threshold challenge to the Court's jurisdiction," requiring the Court to "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (quoting *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009)). When a defendant files a motion to dismiss under 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of the evidence, that the Court has subject matter jurisdiction. *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 158 (D.D.C. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). At this stage, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted).

Meanwhile, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Pitts v. District of Columbia*, 177 F. Supp. 3d 347, 357 (D.D.C. 2016) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). That is, the complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* at 570. In analyzing a motion to dismiss under Rule 12(b)(6), the Court similarly accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Aiteliyev v. Mayorkas*, ---

F. Supp. 3d ---, 2024 WL 551683, at *4 (D.D.C. 2024). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**IV.    Analysis**

    **A.    The Court Has Subject Matter Jurisdiction**

The Government challenges this Court's subject matter jurisdiction, arguing that the complaint should be dismissed because the named defendant, the Secretary of State, cannot provide the relief requested. Mot. at 5–6. It argues that the INA, which "grants consular officers 'exclusive authority to review applications for visas, *preclud[es] even the Secretary of State* from controlling their determinations.'" *Id.* at 5 (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quotation omitted)).

However, this argument has already been considered and rejected by many courts in this district. "Control over a consular officer's visa *determinations* . . . is not the same as control over the *timing* by which the consular officer considers the applications presented to her." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022). The Secretary of State can provide relief by directing consular officers to adjudicate pending visa applications "within a reasonable time," 5 U.S.C. § 555(b). *Id.*; *see also, e.g.*, *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *4 (D.D.C. Feb. 12, 2024); *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023). Thus, the Court has jurisdiction to consider plaintiff's claim of unreasonable delay.

**B.    The Plaintiff Has Failed to State a Claim for Unreasonable Delay**[1]

Turning to the merits, plaintiff contends that the Government has unreasonably delayed the adjudication of his visa application, which has remained in administrative processing for approximately 19 months. *See generally* Compl. He claims that this delay violates the APA, which requires agencies to "conclude" matters presented to them "within a reasonable time," 5 U.S.C. § 555(b), and which directs courts to "compel agency action . . . unreasonably delayed," *id.* § 706(1).[2] *See* Compl. ¶¶ 113–56. The Government moves to dismiss on the grounds that plaintiff cannot identify a nondiscretionary duty it was required to take and because the delay in processing plaintiff's application is not yet unreasonable. *See* Mot. at 10–25. I agree that plaintiff has failed to state a claim for unreasonable delay.

In order to make out an unreasonable delay claim under the APA, plaintiff must first show "that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). The Government argues that plaintiff's claim should be dismissed because it has no clear, non-discretionary duty to adjudicate any specific visa application. Mot. at 10. However, "[g]ranting or refusing a visa to an applicant who has been interviewed is clearly a discrete agency action." *Khazaei*,

---

[1] The Government also makes another argument for why this case should be dismissed on the merits: because the claim is barred by the consular nonreviewability doctrine. Mot. at 6–10; *see Baan Rao*, 985 F.3d at 1027 ("Dismissal based on consular nonreviewability . . . is a merits disposition under Federal Rule of Civil Procedure 12(b)(6)."). Because I dismiss plaintiff's unreasonable delay claim for other reasons, I decline to address this argument.

[2] Plaintiff's mandamus claim is premised on the same unreasonable delay on which his APA claims rest. *See* Compl. ¶¶ 94–112. "The standard by which a court reviews this type of agency inaction is the same under both § 706(1) of the APA and the Mandamus Act." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 152 (D.D.C. 2017); *see also In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). Plaintiff's mandamus claim fails for the same reason his APA claims fail.

6

2023 WL 6065095, at *6. This action is required by both the APA and the State Department's own regulations, which require that a consular officer must "issue" or "refuse" a completed visa application. 22 C.F.R. § 42.81(a); *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (noting that 5 U.S.C. § 555(b) "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time'"). Thus, "[g]ranting or refusing a final visa application is a mandatory agency action," and a failure to do so in a reasonable time is reviewable under the APA. *Vulupala v. Barr*, 438 F. Supp. 3d 93, 100 (D.D.C. 2020); *see also Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); *Khazaei*, 2023 WL 6065095, at *6.

To evaluate the reasonableness of agency delay, courts in our Circuit examine the six factors set out in *Telecommunications Research & Action Center v. FCC ("TRAC")*, 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 815 (D.C. Cir. 2024) (quoting *TRAC*, 750 F.2d at 80). At the motion-to-dismiss stage, "courts in this District have regularly held that it is appropriate to evaluate the *TRAC* factors when determining if a plaintiff's complaint

7

has stated sufficient facts to plead a plausible claim of unreasonable delay in the immigration context." *Patel v. USCIS*, No. 22-cv-1931, 2023 WL 5833688, at *2 (D.D.C. Sept. 8, 2023); *see also Mokkapati v. Mayorkas*, No. 21-cv-1195, 2022 WL 2817840, at *4 n.4 (D.D.C. July 19, 2022) ("[T]he majority view in this District is that application of the *TRAC* factors is appropriate at the motion-to-dismiss stage when the facts alleged do not support a plausible claim of unreasonable delay.").

### 1. *TRAC* Factors 1 and 2

The first two factors—whether Congress has provided a timeframe for making such decisions and whether any delay is reasonable—are often considered together, *see, e.g., Tate v. Pompeo*, 513 F. Supp. 3d 132, 148 (D.D.C. 2021), and the first *TRAC* factor— whether the delay is reasonable—is considered the "most important" of the six, *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). In analyzing these factors, the Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. U.S. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

Plaintiff argues that Congress set out a timeframe of 180 days to process an immigrant visa application. Opp. at 33. He relies on a provision that states: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). However, as courts in this District have found over and over, that language is nothing more than an "aspirational statement" that is precatory, not binding. *Khan v. Bitter*, No. 23-cv-3046, 2024 WL 3887378, at *3 (D.D.C. Aug. 20, 2024) (quoting *Da Costa v. Immigr. Inv.*

8

*Program Off.*, 80 F.4th 330, 344 (D.C. Cir. 2023)). Furthermore, that language does not apply to "the State Department's processing of visa applications, which is a different kettle of fish from immigration benefits." *Dehkordi v. Bitter*, No. 22-cv-2470, 2023 WL 5651845, at *4 (D.D.C. Aug. 31, 2023). This factor, at best, only weakly favors plaintiff.

Absent a congressionally specified timetable for adjudication, "courts typically turn to case law as a guide" to determine the reasonableness of a visa-application delay. *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). And, in general, "Congress has given the agencies wide discretion in the area of immigration processing." *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017). "[D]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (quoting *Yavari v. Pompeo*, No. 19-cv-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)).

Here, plaintiff's visa application has remained in administrative processing for approximately 19 months.[3] This delay is reasonable under the circumstances and, importantly, in comparison to other cases in which applicants have waited for final decisions on their I-130 petitions. *See, e.g., Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (30-month delay not unreasonable); *Dastagir v. Blinken*, 557 F. Supp. 3d

---

[3] Plaintiff urges this Court to calculate the delay as of February 18, 2016, when Ghavami filed the Form I-130 and thus initiated the visa application process. Opp. at 32. But courts in this district have held that when analyzing claims of unreasonable delay, the clock starts not when the initial petition was filed, but as of "the last agency action"—in this case, when plaintiff's visa application was provisionally denied and placed in administrative processing. *Dalmar v. Blinken*, No. 23-cv-3315, 2024 WL 3967289, at *5 (D.D.C. Aug. 26, 2024) (quoting *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024)).

160, 165 (D.D.C. 2021) (29 months not unreasonable); *Armah v. U.S. Dep't of State*, No. 22-cv-1714, 2024 WL 2721634, at *4 n.4, *7 (D.D.C. May 28, 2024) (24 months not unreasonable); *see also Dehkordi*, 2023 WL 5651845, at *4 (delay of 16 months "comparatively small potatoes" in comparison to other delays considered reasonable). Accordingly, this *TRAC* factor strongly favors the Government.

        **2.**    ***TRAC* Factor 4**

The fourth factor considers the effect that a ruling in plaintiff's favor would have on the agency's competing priorities. "Courts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[ ] all others back one space.'" *Ahmadi*, 2024 WL 551542, at *6 (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). "Relief that would simply reorder a queue of applicants seeking adjudication is generally viewed as inappropriate when no net gain in such adjudications is achieved." *Tate*, 513 F. Supp. 3d at 149 (quotation omitted).

This factor heavily favors the Government. *See id.* (citing *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1100). Plaintiff does not contest this point in any meaningful way; he simply asserts that his application "should already be at the front of the queue," that family sponsored immigrant visas are already a priority for the State Department, and that "the fact that the line is barely moving should be relevant." Opp. at 36–37 (quotations omitted).

But consular "[p]rocessing capacity is presently a zero-sum game," so expediting review of plaintiff's application "would necessarily mean additional delays for other

applicants—many of whom undoubtedly face hardships of their own." *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022) (quoting *Khan v. Blinken*, No. 21-cv-1683, 2021 WL 5356267, at *4 (D.D.C. Nov. 17, 2021)). Furthermore, plaintiff has not alleged that the Government has "singled [him] out for mistreatment," which leaves "no basis for reordering agency priorities." *In re Barr Lab'ys, Inc.*, 930 F.2d at 75, 76. "While judicial intervention could assist the [p]laintiff[], it would likely impose offsetting burdens on equally worthy [] visa petitioners who are equally wronged by the agency's delay." *Da Costa*, 80 F.4th at 344 (quotations omitted). Thus, this factor weighs strongly in favor of defendant.

### 3. *TRAC* Factors 3 and 5

The third and fifth factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiff alleges that the delay has turned "what was meant to be a very temporary situation [into] a nightmare of living apart for years" and has kept him "separated from his family with no idea of when, or if, they will ever be reunited." Compl. ¶¶ 8, 83. He argues that this has caused "severe emotional distress and psychological harm to the entire family." *Id.* ¶ 86; *see* Opp. at 34–36. Although plaintiff's frustration is understandable, and his position is certainly deserving of sympathy, his interests are no different than those of other foreign nationals applying for visas in the hopes of reuniting with their families. *See Mohammad v. Blinken*, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) ("[T]he Court is also mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications." (quotation omitted)); *Arab*, 600 F. Supp. 3d at 72 ("The Court

11

sympathizes with plaintiff's concerns—the delays in visa processing have resulted in a prolonged separation of plaintiff's family and challenging hardships. Many other individuals are in similarly trying circumstances, however."). These factors, at best, weigh slightly in favor of plaintiff.

### 4. *TRAC* Factor 6

The final *TRAC* factor states that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (quotation omitted). This requires the Court to "determine whether the agency has acted in bad faith in delaying action." *Fakhimi*, 2023 WL 6976073, at *11 (quoting *Gona v. USCIS*, No. 20-cv-3680, 2021 WL 736810, at *5 (D.D.C. Feb. 25, 2021)). Plaintiff claims that the failure to adjudicate his visa application is alone "an act of bad faith," Opp. at 38, but this conclusory statement does not evidence the type of "agency misconduct" this factor seeks to identify, *see Armah*, 2024 WL 2721634, at *9. Thus, as *TRAC* directs, the lack of impropriety does not weigh against plaintiff. This factor favors neither party and thus does not alter the Court's analysis.

\* \* \*

Overall, these factors weigh in favor of finding that the Government's delay is not unreasonable. Thus, I will GRANT the government's motion to dismiss plaintiff's unreasonable delay claims pursuant to Rule 12(b)(6).

### C. The Court Declines to Compel Production of the CAR

Lastly, plaintiff has filed a motion to compel the Certified Administrative Record ("CAR") pursuant to Local Rule 7(n). *See generally* Mot. to Compel. It says:

In cases involving the judicial review of administrative agency actions, unless otherwise ordered by the Court, the agency must file a certified list of the contents of the administrative record with the Court within 30 days following service of the answer to the complaint or simultaneously with the filing of a dispositive motion, whichever occurs first. Thereafter, counsel shall provide the Court with an appendix containing copies of those portions of the administrative record that are cited or otherwise relied upon in any memorandum in support of or in opposition to any dispositive motion.

Plaintiffs in immigration mandamus cases filed in this District frequently move to compel production of the administrative record, and courts in this District have "routinely rejected those motions." *Janay v. Blinken*, --- F. Supp. 3d ---, 2024 WL 3432379, at *3 (D.D.C. 2024); *see also Dastagir*, 557 F. Supp. 3d at 164 n.5 (holding Rule 7(n) does not apply to cases seeking to compel agency action). Because the administrative record is unnecessary to decide defendant's motion to dismiss, I DENY plaintiff's motion to compel.

## V.    Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED pursuant to Rule 12(b)(6) and plaintiff's motion to compel the administrative record is DENIED. An order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge